UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

LISA MCQUEEN-STARLING,

         Claimant,    Civil Action No. 08-4885 (JGK/RLE)

  - against -         <u>ECF CASE</u>

UNITEDHEALTH GROUP, INC. AND OXFORD
HEALTH PLANS,

         Respondents.
------------------------------------------X

=====================================================
REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITION
TO VACATE ARBITRATION AWARD
=====================================================

              VLADECK, WALDMAN, ELIAS &
               ENGELHARD, P.C.
              Attorneys for Plaintiff
              1501 Broadway, Suite 800
              New York, New York 10036
              (212) 403-7300

Of Counsel:
  Debra L. Raskin
  Maia Goodell

253150 v3

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT......................................................................................... 1

ARGUMENT...................................................................................................................... 2

    I.    STANDARD OF REVIEW ................................................................................ 2

    II.    PRIMA FACIE CASE OF DISCRIMINATION NOT REBUTTED ..................... 4

    III.    FAILURE TO CONSIDER COMPARATOR EVIDENCE OF JOB REDUNDANCY................................................................................................. 5

    IV.    EVIDENCE OF BIAS DISMISSED................................................................... 8

        A.    The Arbitrator Failed to Make Factual Determinations Because of a Fundamental Error of Law.................................................. 8

        B.    Sexual Harassment Standards Are Irrelevant............................................ 10

    V.    RETALIATION ................................................................................................. 10

CONCLUSION................................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

Abramson v. Amer. Univ.,
    No. 86-1413, 1988 WL 152020 (D.D.C. June 13, 1988) ........................................... 9

Brown v. Henderson,
    257 F.3d 246 (2d Cir. 2001) ........................................................................................ 8

Bush v. Fordham,
    452 F. Supp. 2d 394 (S.D.N.Y. 2006) ......................................................................... 6

Cosgrove v. Sears Roebuck & Co.,
    9 F.3d 1033 (2d Cir. 1993) ........................................................................................ 10

Clay v. UPS,
    501 F.3d 695 (6th Cir. 2007) ...................................................................................... 4

Cole v. Burns Int'l Security Serv.,
    105 F.3d 1465 (D.C. Cir. 1997) ................................................................................. 4

Conigliaro v. Horace Mann Sch.,
    No. 95 Civ. 3555, 2000 U.S. Dist. LEXIS 556 (S.D.N.Y Jan. 18, 2000) .................. 6

DeCaire v. Mukasey,
    530 F.3d 1 (1st Cir. 2008) .......................................................................................... 3

De la Cruz v. N.Y. City Human Res. Admin.,
    82 F.3d 16 (2d Cir. 1996) ........................................................................................... 7

Doe v. Menefee,
    391 F.3d 147 (2d Cir. 2004) ....................................................................................... 8

Dunhill Franchisees Trust v. Dunhill Staffing Sys.,
    513 F. Supp. 2d 23 (S.D.N.Y. 2007) .......................................................................... 2

Faragher v. City of Boca Raton,
    524 U.S. 775 (1998) ................................................................................................. 10

GMS Group, LLC v. Benderson,
    326 F.3d 75 (2d Cir. 2003) ......................................................................................... 4

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991) ..................................................................................................... 3

Hall Street Assocs. v. Mattel,
    128 S. Ct. 1396 (2008)..................................................................................................2

Halligan v. Piper Jaffrey, Inc.,
    148 F.3d 197 (2d Cir. 1998)..........................................................................................5

Hardy v. Walsh Mannin Securities, L.L.C.,
    341 F.3d 126 (2d Cir. 2003)..................................................................................4, 7, 8

Koveleskie v. SBC Capital Mkts., Inc.,
    167 F.3d 361 (7th Cir. 1999) ........................................................................................3

Locurto v. Giuliani,
    447 F.3d 159 (2d Cir. 2006)..........................................................................................8

Longmire v. Wyser-Pratte,
    No. 05-civ 2007, WL 2584662 (S.D.N.Y. Sep. 6, 2007)..............................................6

McGuinness v. Lincoln Hall,
    263 F.3d 49 (2d Cir. 2001)............................................................................................6

Miller-El v. Dretke,
    545 U.S. 231 (2005)......................................................................................................7

Porzig v. Dresdner, Kleinwort, Benson, N. Amer. LLC,
    497 F.3d 133 (2d Cir. 2007)..........................................................................................4

Reynolds v. Giuliani,
    506 F.3d 183 (2d Cir. 2007)..........................................................................................3

Roa v. Mineta,
    No. 01-6216, 2002 U.S. App. LEXIS 22338 (2d Cir. Oct. 23, 2002)..........................6

Schwapp v. Town of Avon,
    118 F.3d 106 (2d Cir. 1997)..........................................................................................9

Shumway v. United Parcel Service,
    118 F.3d 60 (2d Cir. 1997)............................................................................................6

Simpson v. Metro-North Commuter R.R.,
    No. 04-civ 2006, WL 2056366 (S.D.N.Y. July 20, 2006) ............................................6

Sumner v. United States Postal Service,
    899 F.2d 203 (2d Cir. 1990)..........................................................................................8

Tomassi v. Insignia Fin. Group, Inc.,
    478 F.3d 111 (2d Cir. 2007).................................................................................9

Triboro Hardware & Supply Corp. v. Federal Ins. Co.,
    45 A.D.3d 134 (N.Y. App. Div. 2d Dep't 2007)....................................................3

Unity Creations, Inc. v. Trafcon Indus., Inc.,
    137 F. Supp. 2d 108 (E.D.N.Y. 2001)...................................................................3

Vail-Ballou Press, Inc. v. Graphic Commc'ns Int'l Union, Int'l Bhd. of
Teamsters, Local 898-m,
    480 F. Supp. 2d 568 (S.D.N.Y. 2007)...................................................................2

Whidbee v. Garzarelli Food Specialties, Inc.,
    223 F.3d 62 (2d Cir. 2000)....................................................................................9

Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,
    103 F.3d 9 (2d Cir. 1997)......................................................................................4

Wright v. Murray Guard Inc.,
    455 F.3d 702 (6th Cir. 2006) ................................................................................7

Zakre v. Norddeutsche Landesbank Girozentrale,
    396 F. Supp. 2d 483 (S.D.N.Y. 2005).................................................................10

## STATUTES

Fed. R. Civ. P. 52..........................................................................................................1

42 U.S.C. § 1983..........................................................................................................3

Second Circuit Local Rule 32.1(b) ..............................................................................6

Second Circuit Local Rule Rule 32.1(c)(2) .................................................................6

CPLR § 5501(c) ...........................................................................................................1

## PRELIMINARY STATEMENT

Respondents UnitedHealth Group, Inc. ("UnitedHealth") and Oxford Health Plans ("Oxford"), (collectively "respondents") purport to provide the Court with the applicable law and critical facts. They provide neither. Instead, in an effort to steer the Court in the wrong direction and obtain review under the wrong standard, respondents compound the Arbitrator's legal errors. With virtually no citation or argument, respondents wrongly maintain that the arbitration agreement they drafted, and required Lisa McQueen ("McQueen") to sign, should be disregarded, and the Court should apply the deferential review standard of the Federal Arbitration Act ("FAA").[1] To the contrary, under New York law and the contract that required McQueen to arbitrate, this Court is to make an independent assessment of the evidence. See CPLR § 5501(c); Memorandum of Law in Support of Petition to Vacate Arbitration Award ("Pet. Br.") 13-15. Even if the parties' contracted standard refers to the federal standard of appellate review, Fed. R. Civ. P. 52 mandates reversal for legal error and clearly erroneous findings of fact. Ignoring the standard of review they prescribed, respondents raise minor factual disputes to distract the Court from the glaring legal errors in the Arbitrator's Opinion and Award ("Opinion"), which require vacatur under any standard.

The Arbitrator ignored established law and found for respondents who failed to rebut petitioner's prima facie case of promotion discrimination; the Arbitrator by-passed the law concerning comparators; she dismissed dozens of discriminatory comments and acts by William Golden ("Golden"), the decision maker, wrongly stating that such proof was not legally sufficient to support a finding of discrimination; and she ignored Golden's admitted refusal to recommend McQueen for other jobs because she had complained of bias. Because of these errors, taken

---

[1] Defendants' Response to Petitioner's Petition to Vacate Arbitration Award ("Resp. Br.") 6-8.

253150 v3

individually or collectively, the Opinion should be reversed.

ARGUMENT

I.  STANDARD OF REVIEW

    A.  Under New York Law, the Parties' Agreed Standard Governs

As explained in petitioner's brief to the State Court, New York law determines the appropriate review standard because this petition was brought pursuant to state law, not the FAA. (Pet. Br. 13-15). Citing Hall Street Assocs. v. Mattel, 128 S. Ct. 1396 (2008), respondents make the bare assertion that the Court should apply the FAA (Resp. Br. 6-7), but do not refute petitioner's showing that Mattel requires enforcement of state law procedures governing arbitration. Respondents fail to offer any authority that the parties' agreed standard of review is not enforceable under state law because the challenge to an arbitration award was removed to federal court. (Pet. Br. 14-15)[2] The Court should apply New York law, enforce the parties' contractual agreement, and vacate the award upon de novo review. Under an alternative New York law standard, the Opinion must be vacated as irrational. (See Pet. Br. at 15-16)[3]

Respondents admit that their Employment Arbitration Policy (the "Policy") provides a standard of review "the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury." (Resp. Br. 7 n.8) Under New York law, the parties' agreed standard must be applied. (Pet. Br. 14) Respondents suggest that this policy refers to the federal appellate

---

[2] The Groups cite (Resp. Br. 7) Dunhill Franchisees Trust v. Dunhill Staffing Sys., 513 F. Supp. 2d 23 (S.D.N.Y. 2007), and Vail-Ballou Press, Inc. v. Graphic Commc'ns Int'l Union, Int'l Bhd. of Teamsters, Local 898-m, 480 F. Supp. 2d 568 (S.D.N.Y. 2007), but there is no suggestion that the parties in those cases contracted for a review standard different from that in the FAA.

[3] Respondents suggest without support (Resp. Br. 7 n.9) that Mattel removes the Court's ability under state law to vacate an irrational award. However, Mattel states that parties "may contemplate enforcement under state statutory or common law . . . where judicial review of a different scope is arguable." 128 S. Ct. at 1406.

review standard which is more deferential than the de novo state standard (id.; see Pet. Br. 13-14 (state standard)), but advance no basis for applying the federal standard. To the extent that there is ambiguity in the Policy, it should be construed against the drafter, respondents, particularly because it is a contract of adhesion that McQueen had to sign to keep her job.[4] State law should thus apply because it affords McQueen more searching judicial review.

Even if the Policy is understood to refer to the federal standard, the Arbitrator's factual findings are reviewed for clear error, and legal conclusions are reviewed de novo. See Reynolds v. Giuliani, 506 F.3d 183, 189 (2d Cir. 2007) (overturning legal conclusion of Section 1983 liability). Because the Opinion is premised on several key legal mistakes, in addition to myriad clear factual errors, it must be vacated under either the federal or state standard for appellate review, and as irrational under state law. See DeCaire v. Mukasey, 530 F.3d 1 (1st Cir. 2008) (based on legal mistakes and clear error, overturning bench trial conclusion of no discrimination).

B.   Manifest Disregard of the Law Under the FAA

Ignoring their own contract, respondents contend the applicable standard for review is "manifest disregard of the law" (Resp. Br. 8) under the FAA. Even in FAA cases, however, review must be sufficient to ensure that arbitrators adhere to the basic underlying statutes, here the equal employment laws. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32 n.4 (1991). A meaningful review standard is a key justification for enforcing in civil rights cases like this one, highly contested pre-dispute, mandatory arbitration provisions. See Koveleskie v. SBC Capital Mkts., Inc., 167 F.3d 361, 365 (7th Cir. 1999) (arbitration agreement enforceable inter alia because arbitrators may not manifestly disregard the law).

---

[4] See Unity Creations, Inc. v. Trafcon Indus., Inc., 137 F. Supp 2d 108, 111 (E.D.N.Y. 2001); Triboro Hardware & Supply Corp. v. Federal Ins. Co., 45 A.D.3d 134, 140 (N.Y. App. Div. 2d Dep't 2007).

253150 v3                              3

The Second Circuit has suggested that Supreme Court precedent may entitle individuals asserting federal statutory claims in arbitration to "heightened scrutiny" to protect their rights. GMS Group, LLC v. Benderson, 326 F.3d 75, 80 (2d Cir. 2003). Contrary to respondents' suggestion (Resp. Br. 8 n.10) petitioner does not argue that the Policy is invalid because respondents paid the Arbitrator, but rather that the arrangement requires careful scrutiny of the outcome. "[O]nly the employer is a repeat player," so the individual employee asserting statutory claims lacks the "structural protections" of settings like collective bargaining. Cole v. Burns Int'l Security Serv., 105 F.3d 1465, 1476 (D.C. Cir. 1997).

Even without heightened scrutiny, arbitrators, as respondents admit (Resp. Br. 8), cannot act in manifest disregard of the law under the FAA. See Porzig v. Dresdner, Kleinwort, Benson, N. Amer. LLC, 497 F.3d 133, 139 (2d Cir. 2007); Halligan v. Piper Jaffrey, Inc., 148 F.3d 197, 202 (2d Cir. 1998); Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 13 (2d Cir. 1997). Where, as here, the arbitrator issues a decision giving an unambiguous reason for the disposition of the case, the court must review the proffered reasoning. Hardy v. Walsh Mannin Securities, L.L.C., 341 F.3d 126, 131 (2d Cir. 2003).

II.     PRIMA FACIE CASE OF DISCRIMINATION NOT REBUTTED

By mid-2003, as the Arbitrator found, any problems with McQueen's management style had been corrected; because she had assumed new duties more than a year earlier, she was, as the Arbitrator also found, qualified for promotion. (Opinion 6) Like the Arbitrator, respondents proffer no explanation (Resp. Br. 12-13) why McQueen was not promoted after any performance issues undisputedly no longer obtained. See Clay v. UPS, 501 F.3d 695, 705-06 (6th Cir. 2007)

(allegation unsupported by evidence insufficient to rebut prima facie case).[5]

In contrast, there is ample evidence of an illegitimate reason – Golden's biased remarks. Because McQueen's prima facie case was unrebutted, a finding of discrimination is mandatory. (Pet. Br. 17-18) The Opinion's contrary conclusion is an error of law, requiring vacatur under any standard. Respondents admit that the prima facie showing shifts the burden to them (Resp. Br. 9 n.11), but fail to acknowledge the Arbitrator did not require them to meet that burden.

II.   FAILURE TO CONSIDER COMPARATOR EVIDENCE OF JOB REDUNDANCY

Respondents, like the Arbitrator, attempt to avoid the undisputed evidence of differential treatment. Golden purports to have fired McQueen because of the more than 200 positions in his department, her job alone was duplicative. Admittedly instructed to "look deep" (Resp. Br. 5), Golden found only McQueen to dismiss. Contrary to respondents' suggestion, petitioner does not challenge whether McQueen or the successful candidate was "more qualified." (Resp. Br. 9-10; see id. 5) Rather, the Arbitrator failed to examine whether McQueen's supposed redundancy was a pretext – as the law required her to do. (Pet. Br. 19)

The Opinion misstates the law of how such an issue should be evaluated. (Opinion 7) The appropriate comparators are those subject to the same standards for the challenged layoff decision – here, job redundancy. (Pet. Br. 21-22) Echoing the Arbitrator's error, respondents argue that McQueen was in "service" while the white men were in "sales." (Resp. Br.) Even given this factually questionable view,[6] respondents cite no evidence, because there is none, that the standard for job redundancy was different in "sales" than in "service."

---

[5] Respondents' citations (Resp. Br. 13 & n.14) to petitioner's purported reluctance to report to anyone other than Golden or her purported failure to mesh with UnitedHealth staff do not concern petitioner's promotion, but only the possibility of transferring her to another office.

[6] There was extensive evidence that McQueen participated in sales. (Pl. Post-Hearing Br. 20-22).

253150 v3                                5

Citing cases unrelated to layoff standards for individuals at the same level reporting to the same decision maker (Resp. Br. 15 & n.17),[7] respondents repeat the Arbitrator's fundamental error of law: similarly situated in all <u>material</u> respects does not mean similarly situated in all <u>immaterial</u> respects. The Second Circuit set forth that standard in <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 53-54 (2d Cir. 2001), and rejected the narrow interpretation of <u>Shumway v. United Parcel Service</u>, 118 F.3d 60, 64 (2d Cir. 1997), respondents assert. (Resp. Br. 15 & n.17) Moreover, unlike in <u>Shumway</u>, 118 F.3d at 64, the comparisons here involve the same decision maker (Golden) and the same policy ("Powerforward").[8]

Golden's vague layoff standard involved a direction to "eliminate unnecessary layers of management." (Pet. Br. 11-13) Nowhere does the Opinion consider whether Paul Marden, Sean Tahany, Howard Margolies, or Darrel Farkus – white managers working for Golden – were "unnecessary layers of management," held "duplicative positions," or performed "similar tasks" to other employees so their positions should have been eliminated. (<u>Id</u>.) The only specific measure for redundancy was "span of control" or the number of direct reports a manager supervised. (Pet. Br. 12) Respondents falsely state that "McQueen had only three direct reports."

---

[7] Defendants cite inapposite unpublished decisions. (Resp. Br. 15 & n.17) <u>Conigliaro v. Horace Mann Sch.</u>, No. 95 Civ. 3555, 2000 U.S. Dist. LEXIS 556 (S.D.N.Y Jan. 18, 2000), considered whether work was "substantially equal" under the Equal Pay Act, a wholly different standard. <u>Roa v. Mineta</u>, No. 01-6216, 2002 U.S. App. LEXIS 22338 (2d Cir. Oct. 23, 2002), is improperly cited, <u>see</u> Second Circuit Local Rule 32.1(b), without precedential effect, Local Rule 32.1(c)(2) and distinguishable. <u>Longmire v. Wyser-Pratte</u>, No. 05-civ-6725, 2007 WL 2584662, at *14 (S.D.N.Y. Sep. 6, 2007) and <u>Simpson v. Metro-North Commuter R.R.</u>, No. 04-civ-2565, 2006 WL 2056366, at *7 (S.D.N.Y. July 20, 2006), involve disparate pay claims comparing the plaintiffs to individuals with greater education, experience, or seniority.

[8] Respondents also cite <u>Bush v. Fordham</u>, 452 F. Supp. 2d 394, 410 (S.D.N.Y. 2006) in which this Court stressed that comparators "need not be identical." Although "performance of some common tasks does not make jobs substantially equal," respondents omit the rest of the quoted sentence: "when material differences also exist." (Resp. Br. 15; 452 F. Supp. 2d at 410). In <u>Bush</u>, unlike here, the criteria for the decisions at issue "were materially different." <u>Id</u>.

(Resp. Br. 11) It is undisputed that in addition to three team leaders, five to nine additional sales administrative employees reported to her directly. (T944 (Golden testimony)) Moreover, Audrey Julien, respondents' sole human resources witness, whom the Arbitrator found credible (Opinion 9), testified that McQueen had 17 or 18 direct reports as of mid-2005. (T959-60).

The Arbitrator thus failed to follow Miller-El v. Dretke, 545 U.S. 231, 247 n.6 (2005), which rejects a "rule that no comparison is probative unless the situation of the individuals compared is identical in all respects." (Pet. Br. 21) Respondents argue that the Supreme Court's analysis of comparator evidence there was limited to the jury selection context. (Resp. Br. 16 n.18) As the Sixth Circuit stated in Wright v. Murray Guard Inc., 455 F.3d 702, 710 (6th Cir. 2006), the mandate of Miller-El, "applies with equal force to the employment-discrimination context."

As the Arbitrator held (Opinion 5) and respondents acknowledge (Resp. Br. 9 n.11), pretext was properly at issue – and evaluating pretext is precisely what the Arbitrator did not do.[9] Respondents' suggestion without authority that the Arbitrator had no obligation to evaluate Golden's decision for sex discrimination because McQueen's replacement was "female" (Resp. Br. 9; emphasis in original) is pure legal error; employers cannot cure discrimination by favoring others in the protected group.[10]

Golden's choice to retain a white "good girl" does not allow respondents to escape examination of the allegedly unique redundancy of McQueen's position for sex and race

---

[9] Ironically respondents dispute the Arbitrator's finding that McQueen made a prima facie showing; they suggest (Resp. Br. 9 n.11) that she must prove she was "more qualified" than the employee Golden retained. This suggestion is both irrelevant, see Hardy, 341 F.3d at 131, and legal error, De la Cruz v. N.Y. City Human Res. Admin., 82 F.3d 16, 20 (2d Cir. 1996) (plaintiff "need not demonstrate that his performance was . . . superior").

discrimination, particularly in light of the extensive evidence of biased comments. The Arbitrator made neither determination, and her decision must therefore be vacated. See Sumner v. United States Postal Service, 899 F.2d 203, 210 (2d Cir. 1990) (reversing trial decision in part because court did not address treatment of comparators "despite its importance to a case such as this").

III. EVIDENCE OF BIAS DISMISSED

    A.    The Arbitrator Failed to Make Factual Determinations Because of a Fundamental Error of Law

The Arbitrator relied on the fundamentally wrong conclusion that, "even assuming they did happen," Golden's many biased comments were not "legally sufficient." (Pet. Br. 22) Respondents try to bury this issue in factual minutiae[11] because the Arbitrator's legal error requires vacatur. The Second Circuit has "not hesitated to find clear error where the Court has failed to synthesize the evidence in a manner that accounts for conflicting evidence' . . . [or] 'failed to weigh all of the relevant evidence before making its factual findings.'" Locurto v. Giuliani, 447 F.3d 159, 181 (2d Cir. 2006) (quoting Doe v. Menefee, 391 F.3d 147, 164 (2d Cir. 2004)). Here, the Arbitrator did not even make findings.

Respondents' suggestion that "only three" racist comments – all by the decision maker – cannot support a finding of discrimination, not only misstates the facts but is legally wrong, echoing the Arbitrator's implicit importing of the severe or pervasive standard from sexual harassment law into this promotion and firing bias case. (See Section IV(B), infra) Any one of Golden's racist remarks would be legally sufficient to sustain a reasonable inference that he was

---

[10] This law was briefed to the arbitrator. Cl. Pre-Hearing Br. 12-13; Cl. Post-Hearing Br. 42; see Brown v. Henderson, 257 F.3d 246, 252-54 (2d Cir. 2001).

[11] Respondents raise several untenable factual disputes about Golden's numerous biased comments (Resp. Br. 17-24), but these disputes are irrelevant; respondents cannot substitute their reasoning for the Arbitrator's legally flawed conclusions. See Hardy, 341 F.3d at 131.

motivated by racism. See Sumner, 899 F.2d at 210 (reversing bench trial decision in light of "direct evidence" of retaliation, decision maker's reference to plaintiff's "war-like attitude").[12] Respondents also wrongly claim (Resp. Br. 17) that Golden made "no comments about [McQueen's] gender." Among other remarks, Golden told McQueen he could not promote her because his boss would not let him promote women; asked if she ever dated outside her race; asked why she had not found a man; propositioned her for sex; and expressed surprise that she had "finally found a man." (Pet. Br. 5-7)

The Arbitrator (Opinion 9) and respondents (Resp. Br. 18) assert that Golden's recognizing McQueen's good work, and giving her less compensation he gave her white male colleagues somehow reduces the probative value of his biased remarks. This position is legal error, Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 117 n.5 (2d Cir. 2007), and does not excuse the Arbitrator's failure to determine whether Golden made dozens of biased comments, many about McQueen and decisionmaking criteria. Similarly, the claim that Golden's discriminatory comments were too remote in time to consider (Opinion 8; Resp. Br. 18-19) is wrong. First, McQueen challenged Golden's failure to promote her beginning in 2003, and respondents admit that the remarks were made well into this period. (Resp. Br. 18) Second, Golden's multiple racist and sexist statements, many about making employment decisions on unlawful bases, would, if believed, add up to strong evidence of bias that cannot be dismissed as "legally insufficient." See DeCaire, 530 F.3d at 16 n.10 (sex-stereotyped comments concerning

---

[12] Contrary to respondents' implication (Resp. Br. 19), evidence relating to bias beyond discrimination against blacks and women is probative here. Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 n.9 (2d Cir. 2000); Schwapp v. Town of Avon, 118 F.3d 106, 111-12 (2d Cir. 1997) (incidents related to other minority groups relevant); Abramson v. Amer. Univ., No. 86-1413, 1988 WL 152020, at *1 (D.D.C. June 13, 1988) ("evidence that [the decision maker] discriminated against other minority groups is surely relevant towards the issue of his discriminatory intent in general").

female deputy's family and subsequent time-barred adverse transfer were relevant to decision maker's later actions); Zakre v. Norddeutsche Landesbank Girozentrale, 396 F. Supp. 2d 483, 508 (S.D.N.Y. 2005) ("most comments potentially reflecting bias have evidentiary value").

B. Sexual Harassment Standards Are Irrelevant

Like the Arbitrator, respondents (Opinion 9; Resp. Br. 20-21) import sexual harassment law standards, although no such claim was asserted here. Faragher v. City of Boca Raton, 524 U.S. 775 (1998), considered when discriminatory remarks without more, could be actionable. Id. at 787-88. In contrast, this case involves "specific employment decisions with immediate consequences." Id. at 786. Neither the Arbitrator nor respondents cite any authority supporting their view that sexual harassment standards about offensiveness limit what would be probative of Golden's bias, or that the affirmative defense to a harassment claim of failure to complain applies to promotion and firing discrimination.

IV. RETALIATION

The Arbitrator found that Golden admitted that he did not give McQueen a recommendation in part because she complained of discrimination. (Pet. Br. 27) For the first time (see Resp. Post-Hearing Br. 42-43), respondents argue that McQueen's difficulty finding a job was not because her only supervisor for the past eight years refused to recommend her. (Resp. Br. 24-25.) Besides being untimely, respondents' citations are inapposite; McQueen is not relying on her own assertions or inferences about a reference; Golden admitted his retaliation. Cf. Cosgrove v. Sears Roebuck & Co., 9 F.3d. 1033, 1042 (2d Cir. 1993) (dismissing plaintiff's unsubstantiated claim that respondent "black-listed" her). That McQueen's job search was ultimately successful mitigates her damages but does not excuse respondents from all liability for the time she could not find work because of their retaliation.

## CONCLUSION

For these reasons and those set forth in Pet. Br., the Opinion should be vacated.

Dated: New York, New York
August 5, 2008

                                        VLADECK, WALDMAN, ELIAS
                                         &amp; ENGELHARD, P.C.

                    By:   _____
                             Debra L. Raskin (DR5431)
                             Maia Goodell (MG8905)
                             Attorneys for Petitioner
                             1501 Broadway, Suite 800
                             New York, New York 10036
                             (212) 403-7300