UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————————————

LISA MCQUEEN-STARLING,

                     Petitioner,           08 Civ. 4885 (JGK)

          - against -                      OPINION AND ORDER

UNITEDHEALTH GROUP, INC. and OXFORD
HEALTH PLANS,

                     Respondents.
——————————————————————————————————

JOHN G. KOELTL, District Judge:

      The petitioner, Lisa McQueen-Starling ("McQueen"), filed

this petition to vacate an arbitration award entered in favor of

the respondents, UnitedHealth Group, Inc. and Oxford Health

Plans ("UHG" and "Oxford," respectively; the "Groups,"

collectively) on her employment discrimination claim.[1]  The

petitioner originally filed her petition in New York State

Supreme Court, New York County, pursuant to Rule 7511 of the New

York Civil Procedure Law and Rules (the "CPLR"), but the

respondents removed the case to this Court.  The petitioner

alleges race discrimination in employment in violation of 42

U.S.C. § 1981, the New York Executive Law § 290 et seq. (the

"Human Rights Law"), and the Administrative Code of the City of

New York § 8-101 et seq. (the "City Law"); and sex

---

[1]      The respondents argue that UHG is not a true respondent, and that the correct respondent is United HealthCare Services, Inc. ("UHC").  However, because both parties and the Arbitrator have consistently referred to UHG as one of the respondents, rather than UHC, this Court will also do so.

discrimination in employment in violation of the Human Rights
Law and the City Law.


I


A

The following facts are undisputed and taken from the
Opinion and Award of the Arbitrator dated January 28, 2008
unless otherwise indicated.[2]

The petitioner, who is an African-American female, was
first hired by respondent Oxford on June 19, 2000 as a Human
Resources Manager.  In that position, she was responsible for
providing human resources support for Oxford's New York Sales
office, which included a Sales department, an Account Management
department, a Small Business department, and a Broker Business
unit.  These departments and units were all under the
supervision of William Golden.  Mr. Golden participated in the
decision to hire the petitioner.  (Arbitrator's Opinion and
Award ("Op.") at 1.)

In early 2001, Mr. Golden hired the petitioner a second
time, for the position of Manager of the Account Management
department.  The Account Management department provided

---

[2]     The Arbitrator's Opinion and Award is attached as Exhibit 1 to the
Affirmation of Debra L. Raskin ("Raskin Aff.").

education and customer service to clients with existing health insurance accounts at Oxford.  The department also supported executives and managers in the Sales department in certain circumstances, and developed relationships with existing group health insurance customers to maintain, renew, and grow accounts.  At the time she accepted her new position, the petitioner had no prior experience in insurance, sales, or account management.  Although the position had originally been advertised at the Director level, the petitioner was hired at the Manager level, which was lower than the Director level.  She received a $10,000 raise in base salary from her previous position as a Human Resources Manager.  In her capacity as Manager of the Account Management department, the petitioner managed three Team Leaders, who in turn managed the activities of 20 to 25 Account Managers in the New York City office.  In November 2001, the petitioner was assigned to supervise additional support staff.  (Op. at 1-2.)  On the whole, the petitioner was an effective manager who improved performance in her department.  (Op. at 5.)

Mr. Golden supervised the petitioner.  Among the other employees supervised by Mr. Golden were two Sales Managers: Paul Marden and Sean Tahany.  In or around July 2002, Mr. Marden complained to Human Resources about the petitioner's working style.  A Human Resources employee met with Mr. Marden and the

petitioner, and the meeting was a success, with no corrective action being taken for either employee.  (Op. at 2.)

In March 2003, Mr. Golden promoted Mr. Marden and Mr. Tahany to Director, although without a merit or promotional increase in compensation.  The petitioner expressed concern to Mr. Golden that she had not been promoted as well.  At the time of the promotions, the heads of the Account Management departments at Oxford's other offices in New Jersey, Connecticut, and Long Island held the title of "Manager."  (Op. at 2.)

On March 14, 2003, the petitioner was awarded additional compensation in the form of stock options.  She received this and all other additional compensation during her tenure at the recommendation of Mr. Golden.  (Op. at 2.)

In April 2003, employees in the petitioner's department complained to Mr. Golden about the petitioner's management style.  Mr. Golden held a meeting that included all Account Managers and Human Resources Manager Audrey Julien.  Mr. Golden instructed the petitioner that she had to treat the Account Managers with respect and improve the tone of the office.  No other corrective action was taken against the petitioner. Following the meeting, members of the petitioner's department seemed to be satisfied with her ongoing management.  In 2004,

and again in 2005, the petitioner received a raise in her compensation.  (Op. at 3.)

In July 2004, Oxford merged with UHG.  Because of the merger, Oxford offered retention bonuses to select individuals. The petitioner was one of three employees under Mr. Golden's supervision whom he recommended for a retention bonus, and she received a $20,000 bonus.  (Op. at 3.)

After the merger, Mr. Marden and Mr. Tahany had their titles changed from Director to Vice President of New York Sales.  The title "Vice President of Sales" was used in the UHG employment structure at the level for which Oxford used the term "Director."  The petitioner's base salary was situated in between Mr. Marden's and Mr. Tahany's.  (Op. at 3.)

In April 2005, the petitioner assumed responsibility for the Account Management department in the Long Island office, and began working in that office two days a week.  In Long Island, the petitioner managed the activities of one additional Team Leader and 11-13 Account Managers.  Shortly thereafter, Oxford converted to the UHG system of dividing existing accounts into "Key Accounts" and "Small Business Accounts."  At the end of November 2005, Mr. Golden placed the petitioner in charge of the Key Accounts, and Kimberly Santillo was promoted from the position of Team Leader to Manager of Small Business Accounts. On December 1, 2005, Mr. Golden emailed the petitioner and

represented to her that he was speaking with Human Resources about promoting her to Director.  (Op. at 3.)

In late January 2006, Mr. Golden was directed to eliminate duplicative positions in order to reduce unnecessary layers of management.  He identified the petitioner's position as duplicative with that of Jean McGann, a UHG employee of over 20 years holding the position of Regional Director of Major Accounts for New Jersey and New York at the time of the merger. Ms. McGann's title had been changed to Vice-President after the merger.  The petitioner's job was the only one identified as duplicative by Mr. Golden.  (Op. at 3, 4.)

On March 29, 2006, Mr. Golden and a Human Resources representative informed the petitioner that her job was being eliminated and that she was being laid off.  Upon receiving the news, the petitioner asked whether she was being laid off because she was black.  Mr. Golden exited the room in response to this question.  (Op. at 4.)

In addition to the foregoing undisputed facts found by the Arbitrator, the petitioner alleges a number of disputed facts, many of which she herself testified to at the Arbitration hearing, that form a significant part of the basis for her discrimination claims.  Specifically, the petitioner testified to, or elicited testimony about, a number of race- and sex-based comments allegedly made or condoned by her supervisor, Mr.

Golden.  Mr. Golden denies making the bulk of the comments, and denies that any comments that he did make reflected a discriminatory intent.  The alleged comments attributed to Mr. Golden by the petitioner include: remarking to the petitioner that "with looks like that you cannot be 100 percent black" (Tr. at 166); suggesting to the petitioner that her dating standards were too high and asking whether she dated outside her race (Tr. at 147); asking her "yes or no" at an office party (Tr. at 143-44, 420-21); asking whether he would be the only white person at her wedding (Tr. at 149); advising her to hire a female candidate for the Account Manager position because she was "beautiful" (Tr. at 125); commenting that "black men don't do well in sales" (Tr. at 127-28); and complaining that another female employee looked "like a boy" (Tr. at 275).[3]  The petitioner also alleges, among other things, that Mr. Golden did nothing to stop jokes among male brokers about female colleagues engaging in sexual relations with them (Tr. at 120-21, 526-28), and, in a separate incident, jokes about a "catfight" between the petitioner and Ms. McGann following a PowerPoint presentation making the same joke (Tr. at 546-49).

---

[3]     All citations to the transcript ("Tr. at _") refer to the transcript of the Arbitration hearing, attached as Raskin Aff. Ex. 2.

B

On April 13, 2006, the petitioner filed a Demand for
Arbitration, pursuant to UHG's Employment Arbitration Policy
whereby respondents and their employees agreed to resolve
employment disputes through internal dispute review ("IDR") and
failing that, through arbitration administered by the American
Arbitration Association ("AAA").  (Raskin Aff. Ex. 3.)  In her
Amended Statement of Claim, dated June 7, 2006, the petitioner
alleged race discrimination in employment in violation of 42
U.S.C. § 1981, the Human Rights Law, and the City Law; and sex
discrimination in employment in violation of the Human Rights
Law and the City Law.  Pursuant to the Human Rights Law and the
City Law, the petitioner also alleged retaliation for her
opposition to discriminatory employment practices.  (Raskin Aff.
Ex. 18.)

The petitioner based these causes of action on alleged
events and remarks occurring during her employment with the
respondents through her termination.  (Raskin Aff. Ex. 18.)  The
essence of the petitioner's claims was that the respondents
discriminated against her by failing to promote her and firing
her on the basis of her race and sex, and also in retaliation
for her opposition to discriminatory practices.  The
petitioner's Amended Statement of Claim relied exclusively upon

events and remarks occurring during her employment with the
respondents and through the termination of that employment.

There were six days of arbitration hearings on the
petitioner's claims, beginning on April 24, 2007 and concluding
on July 17, 2007.  At the hearing and in the post-hearing
briefings that followed, in addition to the claims made in her
Amended Statement of Claim, the petitioner also claimed that Mr.
Golden retaliated against her by refusing to recommend her for
another position with UHG after she was fired because she asked,
at her termination meeting, whether she was fired based on race.

In an Opinion and Award dated January 28, 2008, the
Arbitrator denied all of the petitioner's claims, finding that
the petitioner had failed to meet her burden of proof to
establish discrimination on the basis of race or sex, or
retaliation, with regard to the failure to promote her to the
position of Director and the decision to terminate her
employment.  After outlining the three-part framework for
establishing an employment discrimination claim set forth by the
Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792
(1973),[4] the Arbitrator indicated that the petitioner had met the

---

[4]      The Arbitrator correctly identified the three parts of the McDonnell
Douglas framework: (1) the plaintiff must establish a prima facie case of
discrimination; (2) if she does so, the defendant must put forth a
legitimate, nondiscriminatory reason for the employer's challenged actions;
(3) the burden then shifts back to the plaintiff to demonstrate that the
defendant's proffered reason was a pretext for discrimination.  Id. at 802-
04; see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53.

initial step of the framework of making out a prima facie case
of discrimination.  (Op. at 5-6.)  However, the Arbitrator then
found that the respondents had put forward legitimate business
justifications for not promoting the plaintiff and for
terminating the plaintiff's employment, including her lack of
experience in the field relative to others who received
promotions; complaints about her managerial style; the title
held by her colleagues performing analogous duties in other
offices; the redundancy of her position with Ms. McGann's; and
her relative lack of experience compared to Ms. McGann.  (Op. at
6-7.)  Proceeding to the third part of the McDonnell Douglas
analysis, the Arbitrator found that the factual record did not
support a finding that the business justifications offered by
the respondents for not promoting and eventually firing the
petitioner were pretextual.  Among other things, the Arbitrator
found that the petitioner's reliance on the promotions of Mr.
Marden and Mr. Tahany was misplaced because those two employees,
who worked in the Sales department, were not "appropriate
comparators" to the petitioner; and that the race- and sex-based
remarks allegedly made or condoned by Mr. Golden were an
insufficient basis to infer that Mr. Golden made employment
decisions concerning the petitioner with a discriminatory

---

The McDonnell Douglas framework applies to the petitioner's claims under 42
U.S.C. § 1981, the Human Rights Law, and the City Law.  See, e.g., Pacheco v.
New York Presbyterian Hosp., 593 F. Supp. 2d 599, 626 n.17, 629 n.18
(S.D.N.Y. 2009).

intent.   The Arbitrator noted that the "source and nature of the comments cited, their remoteness in time and the context in which the individual comments were made taken together fail to support a finding of pretext." (Op. at 7-8.)  The Arbitrator did not address the claim raised by the petitioner during the hearing and in the post-hearing briefing that Mr. Golden retaliated against her for asking whether she was fired based on race, by not recommending her for another position after the termination of her employment.

The petitioner moves to vacate the arbitration award denying her claims.


                                  II

There is a threshold question concerning the proper standard of review to apply to the Arbitrator's decision.  There is no dispute in this case that the Arbitration Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA").  The petitioner argues that this appeal should be governed by the standard of review provided in the Arbitration Agreement itself rather than the more restrictive review provision provided in the FAA.

The Arbitration Agreement provided that "the standard of review to be applied . . . will be the same as that applied by an appellate court reviewing the decision of a trial court

sitting without a jury." (Raskin Aff. Ex. 3 ¶ 24(b).)   The
petitioner argues on the basis of this provision that the
standard of review applied by the Appellate Division of the New
York State Supreme Court to bench trial decisions should be
applied here.   Under that standard of review, this Court would
be "empowered to review questions of law and questions of fact .
. . [with] authority [] as broad as that of the [Arbitrator] . .
. [while] remain[ing] mindful that the [Arbitrator] had the
advantage of seeing the witnesses."   New York City Transit Auth.
(Estate of Donner) v. City of New York, 562 N.Y.S.2d 467, 467
(App. Div. 1990); see also N.Y. C.P.L.R. § 5501(c).

The respondents argue that the Court must apply the far more
deferential standard of review set forth in the Federal
Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA").   The FAA
permits a district court to vacate an arbitration award on four
grounds:

   (1)   where  the  award  was  procured  by  corruption,
         fraud, or undue means;

   (2)   where there was evident partiality or corruption
         in the arbitrators, or either of them;

   (3)   where the arbitrators were guilty of misconduct
         in  refusing  to  postpone  the  hearing,  upon
         sufficient cause shown, or in refusing to hear
         evidence   pertinent   and   material   to   the
         controversy; or of any other misbehavior by which
         the rights of any party have been prejudiced; or

   (4)   where the arbitrators exceeded their powers, or
         so  imperfectly  executed  them  that  a  mutual,

final, and definite award upon the subject matter
submitted was not made.

9 U.S.C. § 10(a); <u>see also</u> <u>Stolt-Nielsen SA v. AnimalFeeds Int'l
Corp.</u>, 548 F.3d 85, 90-91 (2d Cir. 2008).

The arbitration award may also be vacated under the FAA if
it exhibited a "manifest disregard" of the law.  <u>Stolt-Nielsen</u>,
548 F.3d at 94 (holding that review for manifest disregard of
the law is a judicial gloss of grounds articulated in the FAA).
Review pursuant to the manifest disregard standard is "severely
limited."  <u>India v. Cargill Inc.</u>, 867 F.2d 130, 133 (2d Cir.
1989) (internal quotation marks omitted); <u>see also</u> <u>Duferco Int'l
Steel Trading v. T. Klaveness Shipping A/S</u>, 333 F.3d 383, 389
(2d Cir. 2003) (noting that between 1960 and the <u>Duferco</u>
decision in 2003, the Court of Appeals for the Second Circuit
"vacated some part or all of an arbitral award for manifest
disregard in . . . four out of at least 48 cases where [the
Court of Appeals] applied the standard").  "The 'manifest
disregard' doctrine allows a reviewing court to vacate an
arbitral award only in 'those exceedingly rare instances where
some egregious impropriety on the part of the arbitrators is
apparent.'"  <u>Stolt-Nielsen</u>, 548 F.3d at 91-92 (quoting <u>Duferco</u>,
333 F.3d at 389).[5]  Manifest disregard requires "more than error

---

[5]      In <u>Stolt-Nielsen</u>, the Court of Appeals noted that after <u>Duferco</u>, under
the manifest disregard standard, the Court of Appeals had vacated one award
and remanded two awards, and declined to do either in fifteen instances.
<u>Stolt-Nielsen</u>, 548 F.3d at 92 n.7.

or misunderstanding with respect to the law," id. at 92
(internal quotation marks omitted), and an arbitration award
should be enforced "if there is a barely colorable justification
for the outcome reached," Wallace v. Buttar, 378 F.3d 182, 190
(2d Cir. 2004) (internal emphasis and quotation marks omitted).

    In Hall Street Assocs., LLC v. Mattel, Inc., 128 S. Ct.
1396 (2008), the Supreme Court addressed the question of whether
parties could supplement by contract the statutory grounds for
vacating an arbitration award provided in the FAA, including the
standard of review established in the statute.   The Supreme
Court answered this question in the negative.   Id. at 1400 ("We
hold that the statutory grounds are exclusive.").   In Hall
Street, the parties to an arbitration agreement had agreed that
a district court could vacate any arbitration award "where the
arbitrator's findings of fact are not supported by substantial
evidence, or [] where the arbitrator's conclusions of law are
erroneous."  Id. at 1400-01.  The Supreme Court held that
parties could not fortify by contract the deferential standard
of review established in the FAA, explaining that the FAA
"substantiat[es] a national policy favoring arbitration with
just the limited review needed to maintain arbitration's

14

essential virtue of resolving disputes straightaway." <u>Id.</u> at 1405.[6]

The Court of Appeals for the Second Circuit has repeatedly reaffirmed the holding in <u>Hall Street</u> in unqualified terms. <u>See, e.g.</u>, <u>In re Am. Express Merchants' Litig.</u>, No. 06 Civ. 1871, 2009 WL 214525, at *7 n.8 (2d Cir. Jan. 30, 2009) ("[P]arties are not free to compose arbitration agreements which provide for a greater scope of federal court review of arbitral awards than that set forth in the [FAA], because this would be at odds with the FAA's substantiation of a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway.") (internal quotation marks and alteration omitted); <u>Stolt-Nielsen</u>, 548 F.3d at 93 ("[In <u>Hall Street</u>] [t]he Court rejected the parties' attempt to contract around the FAA

---

[6]     At oral argument, the petitioner suggested that the holding in <u>Hall Street</u> with respect to whether parties could supplement by contract the review standard provided in the FAA was not entirely clear, because the Supreme Court remanded the case rather than simply affirming the reversal of the judgment modifying the arbitration award. <u>See also Cable Connection, Inc. v. DIRECTV, Inc.</u>, 190 P.3d 586, 599 (Cal. 2008). However, the case was remanded on account of "[o]ne unusual feature": the arbitration agreement in <u>Hall Street</u> had been entered into by the parties in the course of district court litigation and had been adopted by the district court as an order. <u>Hall Street</u>, 128 S. Ct. at 1407. The remand was intended to resolve the resulting question of whether the arbitration agreement should be "treated as an exercise of the District Court's authority to manage its cases under Federal Rules of Civil Procedure 16," and other derivative questions. <u>Id.</u> The issue to be resolved on remand had nothing to do with whether parties could contract to supplement the standard of review provided in the FAA, and there can be no doubt that the Supreme Court held in <u>Hall Street</u> that they could not. <u>See id.</u> at 1408 (Stevens, J., dissenting) ("Today . . . the Court holds that the FAA . . . forbids enforcement of perfectly reasonable judicial review provisions in arbitration agreements fairly negotiated by the parties . . . .").

for expanded judicial review of arbitration awards, concluding

that the grounds for vacatur of an arbitration award set forth

in the FAA . . . are exclusive.") (internal quotation marks

omitted); <u>Esso Exploration and Prod. Chad, Inc. v. Taylors Int'l</u>

<u>Servs., Ltd.</u>, 293 Fed. Appx. 34, 35 (2d Cir. 2008) ("Defendant's

argument that the parties contracted for a heightened standard

of review is squarely foreclosed by the Supreme Court's recent

decision in [<u>Hall Street</u>]."); <u>see also</u> <u>Crawford Group Inc. v.</u>

<u>Holekamp</u>, 543 F.3d 971, 976 (8th Cir. 2008) ("An arbitral award

may be vacated only for the reasons enumerated in the FAA.").

In arguing that the standard of review agreed to by the

parties in the Arbitration Agreement should apply, rather than

the standard provided for in the FAA, the petitioner relies upon

the following language in <u>Hall Street</u>:

> In holding that §§ 10 and 11 [of the FAA] provide
> exclusive regimes for the review provided by the
> statute, we do not purport to say that they exclude
> more searching review based on authority outside the
> statute as well.  The FAA is not the only way into
> court for parties wanting review of arbitration
> awards: they may contemplate enforcement under state
> statutory or common law, for example, where judicial
> review of a different scope is arguable.  But here we
> speak only to the scope of the expeditious judicial
> review under §§ 9, 10, and 11 [of the FAA], deciding
> nothing about other possible avenues for judicial
> enforcement of arbitration awards.

<u>Hall Street</u>, 128 S. Ct. at 1406.

The petitioner argues on the basis of this language from

<u>Hall Street</u> that "parties are free to adopt state rules

16

governing arbitration, even if those rules differ from the FAA." Therefore, the petitioner argues, the Court is not restricted in this case to the deferential standard of review set forth in the FAA.

Although the language cited by the petitioner is suggestive, it is not in itself a sufficient basis for this Court to ignore the plain and unqualified language of the Court of Appeals in interpreting the holding in Hall Street to prohibit parties from contracting around the standard of review outlined in the FAA.  The petitioner fails to identify a single case in this or any other Circuit holding that the FAA does not apply in federal court where a petition to vacate originated in state court and the parties contracted for a standard of review derived from state law.[7]  The petitioner also conceded that the Arbitration Agreement in this case is governed by the FAA. There is persuasive authority in this Circuit that the FAA standard of review applies to a motion to vacate an arbitration

---

[7]     At oral argument, the petitioner invoked Cable Connection, Inc. v. DIRECTV, Inc., 190 P.3d 586 (Cal. 2008).  But in Cable Connection, which involved state court review of an arbitration award, the California State Supreme Court merely held that "the Hall Street holding is restricted to proceedings to review arbitration awards under the FAA, and does not require state law to conform with its limitations." Id. at 599.  Thus, Cable Connection has no bearing on this case, because it addressed the question of whether after Hall Street, a state must conform its own standard for reviewing arbitration awards to the FAA standard, while this case concerns the separate question of whether parties to an arbitration agreement that falls within the FAA may contract to compel a federal court to ignore the FAA standard of review and adopt a different standard of review.  Indeed, in Cable Connection the California Supreme Court explicitly relied on the notion that "the United States Supreme Court does not read the FAA's procedural provisions to apply to state court proceedings." Id. at 597 (internal quotation marks omitted).

award that was originally brought in state court but has been
removed to federal court.  See Vail-Ballou Press, Inc. v.
Graphic Commc'ns Int'l Union, Int'l Bhd. of Teamsters, Local
898-m, 480 F. Supp. 2d 568, 571 (N.D.N.Y. 2007) (applying FAA
standard of review where motion to vacate originated in state
court but was removed); Dunhill Franchisees Trust v. Dunhill
Staffing Sys., 513 F. Supp. 2d 23, 26 (S.D.N.Y. 2007) (applying
FAA standard of review where motion to confirm arbitration award
originated in state court but was removed).  Therefore, the fact
that the petitioner originally brought her petition to vacate in
state court does not warrant the application of a state standard
of review.

The petitioner attempts to distinguish this persuasive
authority by arguing that in this case, unlike in those cases,
the parties contracted for a state law standard of review.  But
if bringing a petition in state court is insufficient to
displace the FAA standard of review once the case has been
removed to federal court, it is difficult to see how a
contractual agreement by the parties to apply a state law
standard of review could change the analysis, because
contracting around the FAA is precisely the maneuver prohibited
by Hall Street and the cases in this Circuit interpreting it.
Moreover, the petitioner has failed even to show that the
parties agreed that a state law standard of review should apply

in this case.  The language of the Arbitration Agreement plainly does not specify whether a state or federal standard of review is contemplated, as the petitioner conceded at oral argument. (Raskin Aff. Ex. 3 ¶ 24(b).)

The petitioner appears to acknowledge the weakness of the argument that the parties agreed on a state standard of review by arguing in the alternative that the federal standard for appellate review of bench trial decisions should apply instead of the FAA standard of review.  But this argument is without merit, because there is no support for the proposition that parties can contract around the FAA standard of review by choosing an alternative federal standard.

In sum, the petitioner points to no case relying on the cited language in Hall Street to apply a non-FAA standard of review to a petition to vacate an arbitration award pending before a federal court, where the agreement is concededly governed by the FAA, even if the petition was originally brought in state court.  Therefore, the deferential FAA standard of review applies in this case.


III

The petitioner advances four main arguments in support of vacating the arbitration award: (1) that her prima facie case of promotion discrimination was not rebutted; (2) that the

19

Arbitrator improperly failed to consider "comparator evidence" in evaluating alleged job redundancy; (3) that the Arbitrator improperly dismissed evidence of bias; and (4) that the Arbitrator did not acknowledge the respondents' effective admission of retaliation.  The Court addresses each of these four arguments in turn.

                              A

     The petitioner argues that she made out a prima facie case of promotion discrimination that was not rebutted, and therefore the Arbitrator should have ruled in her favor.  However, the premise of this argument is flawed.  The respondents rebutted the petitioner's prima facie case of promotion discrimination with a range of business justifications for not promoting the petitioner.  These included: complaints about the petitioner lodged by colleagues; complaints about the petitioner lodged by employees who worked under her; and the fact that colleagues with analogous responsibilities in the company's other offices did not hold the title of "Director."  (Op. at 2-3.)

     The petitioner argues that the complaints cited by the Arbitrator were made and resolved no later than 2003, and thus cannot serve as justification for the respondents' decision not to promote her sometime between 2003 and the termination of her employment in 2006.  This argument is without merit.  First, the

respondents provided evidence, which the Arbitrator credited, that Mr. Golden was taking steps to promote the petitioner toward the end of 2005.  (Op. at 3.)  In any event, the petitioner provides no legal or factual support for its argument that numerous complaints about an employee in the past cannot justify a decision by the employer to delay promoting that employee for a period of years.  The petitioner cites no cases and elicited no testimony that would preclude the Arbitrator from finding that such a delay was reasonable and did not reflect a discriminatory motive.

Moreover, the complaints by colleagues and employees were not the exclusive business justifications advanced by the respondents and credited by the Arbitrator.  As discussed above, the Arbitrator also noted that the petitioner's colleagues in Oxford's other offices did not hold the title of "Director." The petitioner argues that this fact could only justify the decision not to promote the petitioner in 2003.  But the petitioner points to no evidence that her colleagues in Oxford's other offices were given the title of "Director" in 2004 or 2005, and thus there is no reason why the justification would not continue to be viable after 2003.  The petitioner's related argument that the Arbitrator expressly cabined the business justifications based on complaints about the petitioner and the status of the petitioner's colleagues in other offices to the

year 2003 is not supported by the Arbitrator's language.   The
Arbitrator explicitly found that the respondents had put forward
legitimate business justifications for the petitioner's non-
promotion "during the relevant time period," not just during
2003.  (Op. at 6.)

Thus, the petitioner's argument that an arbitration award
in her favor was required because her prima facie case of
discrimination was unrebutted is without merit.   The respondents
provided rebuttal evidence of business justifications for the
petitioner's non-promotion from 2003 to 2006, and it was for the
Arbitrator to assess and weigh this evidence, which the
Arbitrator did.   Therefore, the petitioner's first argument does
not provide a basis for vacating the Arbitration award.

B

The petitioner's second argument is that the Arbitrator
improperly failed to consider "comparator evidence" with respect
to determining whether the dismissal of the petitioner was
discriminatory.   The petitioner argues that the Arbitrator
"should have examined the men at [the petitioner's] level who
worked for Golden to test his claim that her job was redundant
while theirs was not."   The gist of the petitioner's argument is
that an examination of the positions of three of her white male
colleagues at Oxford (which had, by the time of her dismissal,

22

merged with UHG) – Mr. Marden, Mr. Tahany, and Howard Margolies
– would have revealed them to be duplicative, thereby belying
the proffered explanation for the termination of the
petitioner's employment.

This argument is unavailing, because it reflects a
misimpression that the Arbitrator was required to make an
independent determination with respect to whether the positions
held by the petitioner's named colleagues were redundant.  The
Arbitrator did not need to make such a determination, because
she made a factual finding that Mr. Marden and Mr. Tahany were
not appropriate comparators to the petitioner.  See Graham v.
Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) ("[T]he
plaintiff must show that she was similarly situated in all
material respects to the individuals with whom she seeks to
compare herself.") (internal quotation marks omitted).  The
Arbitrator provided multiple bases for this factual finding: Mr.
Marden and Mr. Tahany were Sales executives and the petitioner
was not; they had spent more time at Oxford than the petitioner;
and they had substantial experience in sales and insurance
dating back to before they were hired at Oxford, while the
petitioner did not.  The Arbitrator took into account the
partial overlap in functions performed by the petitioner and the
putative comparators, but found that the overlap was not
sufficiently substantial to consider the petitioner to be

similarly situated to the putative comparators.  (Op. at 7-8.)
These were fact-specific findings that were best left to the
sound judgment of the Arbitrator, who had the advantage of
seeing and hearing the witnesses.  See Graham, 230 F.3d at 39
("Whether two employees are similarly situated ordinarily
presents a question of fact for the [fact-finder].").

     The petitioner urges that under Graham, she must be
regarded as similarly situated to her putative comparators if
they were subject to the same layoff standard that she was,
irrespective of the discrepancies between their employment
responsibilities and her own.  See id. at 40 (looking to whether
"the plaintiff and those he maintains were similarly situated
were subject to the same workplace standards").  She further
urges that there was no explicit finding or record evidence
establishing that the putative comparators were not subject to
the same dismissal standard as the petitioner.  But it was the
petitioner's burden to show that she was "similarly situated in
all material respects" to her putative comparators, rather than
the respondents' burden to prove a negative.  Id. at 39
(internal quotation marks omitted).  Thus, the lack of
affirmative evidence in the record that employees performing
different functions were evaluated differently provides an
insufficient basis to conclude that the petitioner was similarly
situated to her putative comparators.  Moreover, contrary to the

petitioner's representation, the memorandum sent to Mr. Golden and others concerning cost-cutting measures at UHG, including layoffs, can hardly be said to have established a clearly defined, comprehensive layoff standard to be applied mechanically and universally to employees performing different functions.  (See Raskin Aff. Ex. 10 ¶ 4.)  Indeed, the petitioner admitted in her reply brief that the layoff standard to be applied by Mr. Golden was "vague."  Thus, it was not manifest disregard of the law for the Arbitrator to find that the petitioner was not similarly situated to her putative comparators.[8]

Therefore, the petitioner's second argument does not provide a basis for vacating the arbitration award.

C

The petitioner's third argument is that the Arbitrator improperly dismissed evidence of bias exhibited by Mr. Golden against the petitioner based on her race and sex.  The petitioner relies on a litany of remarks allegedly made by Mr. Golden that purportedly support the petitioner's claim that she was dismissed because of race and sex discrimination.  In her

---

[8]      As the petitioner observes, the Arbitrator did not discuss Mr. Margolies.  However, because the petitioner notes in her own brief that Mr. Margolies reported directly to Mr. Tanahy and was a member of Mr. Tahany's department, rather than the petitioner's department, there is no reason to believe that it was error for the Arbitrator not to find that the petitioner and Mr. Margolies were similarly situated.

Opinion and Award, the Arbitrator expressed skepticism over whether many of these remarks were made, noting, among other things, a lack of documentation.  (Op. at 8-9.)  She held that even assuming the remarks were made, given their "context," they were insufficiently related in time, content, and source to support the claim that the petitioner was not promoted and was eventually laid off based on race and sex discrimination.  (Op. at 7-8.)

It was not manifest disregard of the law for the Arbitrator to find that the alleged remarks by Mr. Golden, if made, did not support the petitioner's discrimination claims.  The Arbitrator explained why she found many of these remarks, considered in their context, insufficient evidence of discriminatory intent.[9] For example, the Arbitrator credited Mr. Golden's testimony that any remark he made about black men not doing well in sales concerned the under-representation of African-American men in sales, not the quality of their work.  (Op. at 9.)  She credited testimony that Mr. Golden once remarked upon the value of hiring a "nice looking" female applicant, but found that this comment was remote from the employment decisions at issue in this case because it occurred in 2001, and that it was not salient background because Mr. Golden had not made any similar comments

---

[9]     The petitioner conceded at oral argument that the Arbitrator was under no obligation to discuss every alleged discriminatory remark.

thereafter.  (Op. at 8.)  The Arbitrator noted that Mr. Golden
had been admonished about that comment by Ms. Julien, a Human
Resources Manager, in 2001, and there was no evidence Mr. Golden
made a similar comment thereafter. (Op. at 8.)  The Arbitrator
implied that an alleged comment in 2002 by Mr. Golden to the
petitioner that her "standards were too high" was not offensive,
based in part on the fact that the petitioner never indicated
that it was offensive until she initiated this lawsuit.  (Op. at
8-9.)  Similarly, she did not make a finding that any remarks
made by Mr. Golden to the petitioner at an office party in 2002
actually represented a sexual proposition; rather, after hearing
the testimony she found only that anything Mr. Golden said to
the petitioner during the party which she found offensive was
unrelated to the employment decisions at issue in this case.
(Op. at 9.)  The Arbitrator also found that a PowerPoint
presentation which allegedly mocked the petitioner and Ms.
McGann by intimating that they would engage in a "catfight" was
inoffensive in the context it was made – namely, the PowerPoint
presentation mocked all employees.  (Op. at 9.)

     All of these findings by the Arbitrator, made on the basis
of the testimony and the credibility of the witnesses, required
a fact-intensive inquiry and are beyond the severely limited
scope of judicial review under the FAA.  <u>See, e.g.</u>, <u>Ganguly v.</u>
<u>Charles Schwab & Co.</u>, No. 03 Civ. 6454, 2004 WL 213016, at *3-*4

(S.D.N.Y. Feb. 4, 2004) (refusing to vacate decision that turned on "fact-intensive issues," including "credibility issues, which are beyond this Court's power to review").  The Arbitrator found that the comments allegedly made by Mr. Golden and others to the petitioner were not indicative of a discriminatory intent in making employment decisions, taking into account the context in which the remarks were made, their remoteness in time from the employment actions at issue, their content, and their sources. Because these findings were fact-intensive and the Arbitrator was better positioned to judge the credibility of the witnesses than this Court, and in light of the deferential standard of review mandated by the FAA, the alleged comments attributed to Mr. Golden and the related comments and events attributed to others do not provide a basis for vacating the arbitration award.  In short, the decision with respect to how much weight to give the petitioner's testimony about certain alleged remarks and how much weight to give competing testimony about the same alleged remarks is best left to the sound judgment of the Arbitrator.[10]

---

[10]      In her papers and at oral argument, the petitioner argued that the Arbitrator mistakenly applied the Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), in drawing a line between alleged discriminatory remarks made within the statute of limitations period for her claims, and those alleged remarks made outside the statute of limitations period.  The petitioner has not brought a hostile work environment claim on the basis of any alleged discriminatory remarks, and she is correct that under Morgan any such remarks, whenever made, may be considered in connection with determining whether the respondents acted with discriminatory intent toward the petitioner in failing to promote her and in

D

The petitioner's fourth argument is that the Arbitrator
failed to address the petitioner's claim that Mr. Golden
retaliated against her by not recommending her for another
position after she was fired because at her termination meeting,
she asked whether she was fired on the basis of race.  The
petitioner requests that the case be remanded to the Arbitrator
for clarification with respect to this retaliation claim.

The petitioner's Amended Statement of Claim cabined her
retaliation claims to acts and practices of the respondents
occurring through the termination of her employment on March 29,
2006.  (Raskin Aff. Ex. 18 ¶¶ 18, 37-43.)  However, in her
opening statement at the hearing, counsel for the petitioner
clearly articulated a claim for retaliation based on Mr.
Golden's alleged refusal to provide a recommendation for the
petitioner based on her question at the termination meeting as
to the reason for her dismissal.  (See Tr. at 17-18.)  In
addition, during the hearing the petitioner elicited testimony
about Mr. Golden's refusal to provide a recommendation based on

---

terminating her employment.  See id. at 112-13.  But as seen in the foregoing
discussion, the Arbitrator plainly considered the alleged discriminatory
remarks, whenever made, in precisely this way.  Any error made by the
Arbitrator in unnecessarily distinguishing alleged remarks made prior to
April 13, 2003 as not actionable in themselves, before considering those same
remarks in their context as possible evidence of discriminatory intent, falls
well short of manifest disregard of the law.

what transpired at the termination meeting, (see Tr. at 861-64), and she reasserted a claim for retaliation based on this refusal in her post-hearing briefing to the Arbitrator.  The respondents engaged this retaliation claim on the merits in their own post-hearing briefing to the Arbitrator, and at oral argument the respondents conceded that they would be "hard-pressed" to deny that the claim was fairly before the Arbitrator.

In light of the arguments and the testimony at the hearing, the contents of the parties' post-hearing briefing to the Arbitrator, and the representations made to this Court at oral argument, it is plain that a claim for retaliation based on Mr. Golden's refusal to recommend the petitioner for another position after the termination of her employment was before the Arbitrator.  In effect, the claim was tried by the implied consent of the parties, despite the petitioner's failure to raise it in her Amended Statement of Claim.  See Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.").

The respondents concede that a district court may remand an arbitration award to the Arbitrator for further clarification if the award is incomplete or ambiguous.  See, e.g., Rich v. Spartis, 516 F.3d 75, 83 (2d Cir. 2008).  However, they contend that the award in this case was not incomplete or ambiguous,

because the Arbitrator represented that "Lisa McQueen-Starling's claims of retaliation for opposing discriminatory employment practices . . . are denied." (Award of Arbitrator.)  This argument is without merit, because there is no indication in the Arbitrator's Opinion that she considered the retaliation claim in question, and every indication to the contrary.  In denying the petitioner's retaliation claims, the Arbitrator explained that any complaints about discrimination the petitioner made from 2002 to 2005, and of which Mr. Golden was aware, were not persuasive evidence of retaliation because they were remote in time from the acts of non-promotion and termination of the petitioner's employment.  This explanation would make no sense if the Arbitrator were considering the petitioner's claim that Mr. Golden retaliated against her for asking at her termination meeting in 2006 whether she was fired based on race.  Moreover, the Arbitrator's analysis of the petitioner's retaliation claims makes no mention of the claim in question.  (Op. at 10-11.)

Therefore, pursuant to the petitioner's request, this case should be remanded to the Arbitrator strictly for clarification and decision with respect to the unaddressed retaliation claim. In ordering a remand for clarification, the Court does not require the arbitrator to state her reasons, but only to explain her award with respect to the unaddressed retaliation claim "in

a way sufficient to allow effective judicial review." Rich, 516
F.3d at 83.

## CONCLUSION

For the reasons explained above, the petition to vacate the
arbitration award is **denied** except to the extent that the
arbitration award disposed of the petitioner's claim that she
was the victim of retaliation for asking whether she was fired
on the basis of race. With respect to that single retaliation
claim, the matter is remanded to the Arbitrator to clarify her
ruling.[11] See Seton Co. v. Lohmann GmbH & Co., No. 90 Civ. 1312,
1992 WL 80637, at **7-8 (S.D.N.Y. Apr. 9, 1992) (arbitration
award can be remanded in part for clarification).

The Clerk is directed to close Docket No. 1. The Clerk is
directed to close this case. Either party may move to reopen
this case thirty (30) days after any subsequent decision by the
Arbitrator.

**SO ORDERED.**

Dated:   New York, New York
         March 20, 2009

John G. Koeltl
United States District Judge

---

[11]    The Court declines to confirm the arbitration award, because the
respondents have not moved for confirmation or moved to dismiss the petition
to vacate. Cf. Sanluis Developments, LLC v. CCP Sanluis, LLC, 556 F. Supp.
2d 329, 332 (S.D.N.Y. 2008) ("When a party moves to dismiss a motion to
vacate an arbitration award, the court may, sua sponte, treat the motion to
dismiss as a motion to confirm the award.").

32