**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**LISA MCQUEEN-STARLING,**

                     **Petitioner,**            **08 Civ. 4885 (JGK)**

        **- against -**                        **OPINION AND ORDER**

**UNITEDHEALTH GROUP, INC. and OXFORD**
**HEALTH PLANS,**

                     **Respondents.**
------------------------------------

**JOHN G. KOELTL, District Judge:**

The petitioner, Lisa McQueen-Starling ("McQueen"), has moved to reopen her petition to vacate an arbitration award entered in favor of the respondents, UnitedHealth Group, Inc. and Oxford Health Plans ("UHG" and "Oxford," respectively; the "Groups" or "respondents," collectively)[1], on her employment discrimination claim. The petitioner originally alleged race discrimination in employment in violation of 42 U.S.C. § 1981, the New York Executive Law § 290 et seq. (the "NYSHRL"), and the Administrative Code of the City of New York § 8-101 et seq. (the "NYCHRL"); and sex discrimination in employment in violation of the NYSHRL and NYCHRL. The arbitrator rejected the petitioner's claims and found in favor of the respondents. This Court denied the petitioner's petition to vacate the arbitration award but remanded the case to the Arbitrator to clarify whether the award

---

[1] The respondents argue that UHG is not a true respondent, and that the correct respondent is United HealthCare Services, Inc. ("UHC"). However, because both parties and the Arbitrator have consistently referred to UHG as one of the respondents, rather than UHC, this Court will also do so.

1

disposed of the petitioner's claim that she was the victim of retaliation for asking whether she was fired on the basis of her race. See McQueen-Starling v. Unitedhealth Group, Inc., No. 08 Civ. 4885, 2009 WL 755290, at *12 (S.D.N.Y. Mar. 20, 2009) ("McQueen I"). After remand, the Arbitrator rejected the claim of retaliation without explanation. The petitioner now moves to reopen her petition to vacate the Arbitrator's award.

I

A

The following facts are undisputed and are taken from the Opinion and Award of the Arbitrator dated January 28, 2008 unless otherwise indicated.[2] They are set out only as necessary to understand the issues on this motion to reopen. A more complete description of the facts is set out in McQueen I. See Id.

The petitioner, who is an African-American female, was first hired by respondent Oxford on June 19, 2000 as a Human Resources Manager II. In that position, she was responsible for providing human resources support for Oxford's New York Sales

---

[2] The Arbitrator's Opinion and Award is attached as Exhibit 1 to the Affirmation of Debra L. Raskin, May 28, 2009.

office, which included a Sales department, an Account Management department, a Small Business department, and a Broker Business unit.  These departments and units were all under the supervision of William Golden.  Golden participated in the decision to hire the petitioner.  (Arbitrator's Opinion and Award ("Arbitrator Op.") at 1.)

In early 2001, Golden hired the petitioner a second time, for the position of Manager of the Account Management department.  Golden supervised the petitioner.  Among the other employees supervised by Golden were two Sales Managers: Paul Marden and Sean Tahany.  In March 2003, Golden promoted Mr. Marden and Mr. Tahany to Director, although without a merit or promotional increase in compensation.  The petitioner expressed concern to Golden that she had not been promoted as well.  (Arbitrator Op. at 1-2.)

In July 2004, Oxford merged with UHG.  Because of the merger, Oxford offered retention bonuses to select individuals.  The petitioner was one of three employees under Golden's supervision whom he recommended for a retention bonus, and she received a $20,000 bonus.  After the merger, Mr. Marden and Mr. Tahany had their titles changed from Director to Vice President of New York Sales.  (Arbitrator Op. at 3.)

In late January 2006, Golden was directed to eliminate duplicative positions in order to reduce unnecessary layers of

3

management.  He identified the petitioner's position as duplicative with that of Jean McGann, a UHG employee of over 20 years holding the position of Regional Director of Major Accounts for New Jersey and New York at the time of the merger. Ms. McGann's title had been changed to Vice-President after the merger.  (Arbitrator Op. at 3, 4.)

On March 29, 2006, Golden and a Human Resources representative informed the petitioner that her job was being eliminated and that she was being laid off.  Upon receiving the news, the petitioner asked whether she was being laid off because she was black.  Golden exited the room in response to this question.  The petitioner's termination was effective April 6, 2006.  (Arbitrator Op. at 4.)

B

On April 13, 2006, the petitioner filed a Demand for Arbitration, pursuant to UHG's Employment Arbitration Policy whereby respondents and their employees agreed to resolve employment disputes through internal dispute review ("IDR") and failing that, through arbitration administered by the American Arbitration Association ("AAA").  (Raskin Aff. Ex. 3, Apr. 24, 2008.)  In her Amended Statement of Claim, dated June 7, 2006, the petitioner alleged race discrimination in employment in

violation of 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL; and sex discrimination in employment in violation of the NYSHRL and the NYCHRL.  Pursuant to the NYSHRL and the NYCHRL, the petitioner also alleged retaliation for her opposition to discriminatory employment practices.  (Raskin Aff. Ex. 18, Apr. 24, 2008.)  The petitioner based these causes of action on alleged events and remarks occurring during her employment with the respondents through her termination.  (Raskin Aff. Ex. 18, Apr. 24, 2008.)

There were six days of arbitration hearings on the petitioner's claims, beginning on April 24, 2007 and concluding on July 17, 2007.  At the hearing and in the post-hearing briefings that followed, in addition to the claims made in her Amended Statement of Claim, the petitioner also claimed that Golden retaliated against her by refusing to recommend her for another position with UHG after she was terminated because she asked, at her termination meeting, whether she was fired based on race.  At the arbitration hearing, there was evidence that Golden did not give the petitioner a recommendation or job search assistance in part because she asked him if he was terminating her employment because she was black.  Golden was confronted with the following testimony from his deposition and confirmed that he gave the testimony.

5

> Question: Did you think your input would be helpful to Ms. McQueen in getting another position at Unitedhealth Care?
>
> Answer: I think based on the circumstances under which she left I didn't feel appropriate that I would respond to the request.
>
> Question: What do you mean the circumstances under which she left? Her raising the issue of bias?
>
> Answer: Just how confrontational the meeting was. I felt it was not appropriate for me to weigh in.
>
> Question: What made it confrontational?
>
> Answer: Her reaction.
>
> Question: Is that because she said[, I]s this because I'm black?
>
> Answer: It was more the tone of her voice more than anything else.
>
> Question: But also what she said?
>
> Answer: What she said, but more the tone of her voice.

(Tr. 862-63.) There was also evidence that Golden spoke to Tahany, a Caucasian male, whose position was eliminated, about another job within UHG. (Tr. 686-87, 840-41.)

In an Opinion and Award dated January 28, 2008, the Arbitrator denied all of the petitioner's claims, finding that the petitioner had failed to meet her burden of proof to establish discrimination on the basis of race or sex, or retaliation, with regard to the failure to promote her to the position of Director and the decision to terminate her employment. (Arbitrator Op. at 11.) The Arbitrator did not

6

address the petitioner's claim raised during the hearing and in the post-hearing briefing that Golden retaliated against her because Golden did not recommend her for another position when her employment was terminated after she asked whether she was fired because of her race.

The petitioner filed a petition in this Court to vacate the arbitration award entered in favor of the respondents.  By Opinion dated March 20, 2009, the Court declined to vacate the award, finding all but one of the petitioner's arguments for vacating the award to be without merit.  See McQueen, 2009 WL 755290, at *12.  The Court, however, remanded the case to the Arbitrator for clarification on the petitioner's final argument in support of her motion to vacate, in which she argued that the Arbitrator failed to address her claim that Golden retaliated against her by not recommending her for another position after she was terminated. See id.  The Court specifically noted that the Court was not requiring the Arbitrator to state her reasons, but only to explain her award with respect to the unaddressed retaliation claim "in a way sufficient to allow effective judicial review."  Id. (internal quotation marks omitted).  The Court noted that either party could "move to reopen this case thirty (30) days after any subsequent decision by the Arbitrator."  Id.

The Arbitrator's clarification opinion recounted the history of the arbitration proceedings and simply stated that the prior award "disposed of all of [the petitioner's] claims of retaliation for opposing discriminatory employment practices, including the claim that she was the victim of retaliation for asking whether she was fired on the basis of race." (Arbitrator's Clarification at 1.)[3]  The explanation provided no meaningful basis for effective judicial review.

The petitioner now moves to vacate the Arbitrator's finding that the petitioner was not a victim of retaliation, arguing that it constitutes manifest disregard of the law.

II

The Arbitration Agreement in this case is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA").  The FAA permits a district court to vacate an arbitration award on four statutory grounds.  9 U.S.C. § 10(a); see also Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 90-91 (2d Cir. 2008) cert. granted, 129 S. Ct. 2793 (U.S. Jun. 15, 2009) (No. 08-1198).

---

[3]  The Arbitrator's Clarification of Award is attached as Exhibit 2 to the Affirmation of Debra L. Raskin, May 28, 2009.

The arbitration award may also be vacated under the FAA if it exhibited a "manifest disregard" of the law. Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 407 (2d Cir. 2009); Stolt-Nielsen, 548 F.3d at 94. Review pursuant to the manifest disregard standard is "severely limited." India v. Cargill Inc., 867 F.2d 130, 133 (2d Cir. 1989) (internal quotation marks omitted); see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003) (noting that between 1960 and the Duferco decision in 2003, the Court of Appeals for the Second Circuit "vacated some part or all of an arbitral award for manifest disregard in . . . four out of at least 48 cases where [the Court of Appeals] applied the standard"). "The manifest disregard doctrine allows a reviewing court to vacate an arbitral award only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent," Stolt-Nielsen, 548 F.3d at 91-92 (internal quotation marks omitted); manifest disregard requires "more than error or misunderstanding with respect to the law," id. at 92 (internal quotation marks omitted), and an arbitration award should be enforced "if there is a barely colorable justification for the outcome reached," Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004) (internal emphasis and quotation marks omitted). While "[a]rbitration awards are subject to very limited review," Willemijn Houdstermaatschappij, BV v. Standard

9

Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (alteration in original), it is nevertheless the case that an arbitration award should not be confirmed where it can be shown that the arbitration panel acted in "manifest disregard of the law" to such an extent that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators . . . [was] well defined, explicit, and clearly applicable." Hardy v. Walsh Manning Sec., L.L.C., 341 F.3d 126, 129 (2d Cir. 2003) (citing DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir 1997) (citation and internal quotation omitted)).

Arbitrators are not required to explain their award. See e.g., Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1214 (2d Cir. 1972). However, the Court of Appeals for the Second Circuit has held that "where a reviewing court is inclined to find that arbitrators manifestly disregarded the law or the evidence and that an explanation, if given, would have strained credulity, the absence of explanation may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard." Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 204 (2d Cir. 1998).[4] Halligan, like this case, involved "the unique concerns

---

[4] The Court of Appeals has clarified that Halligan does not establish a "manifest disregard of the evidence" standard. Wallace, 378 F.3d at 191-93.

10

at issue with employment discrimination claims." Wallace, 378 F.3d at 192.

III

The petitioner argues, in support of vacating the arbitration award, that the Arbitrator manifestly disregarded the law because unrebutted evidence was presented at the arbitration hearing that Golden did not provide the petitioner a recommendation in part because she had complained of discrimination. The petitioner argues that the Arbitrator disregarded the law that requires a decision in favor of a claimant who demonstrates that retaliation played a part in an employment action. The Court remanded the original award to the Arbitrator to give the Arbitrator the opportunity to explain whether she in fact determined this claim of retaliation because it was not included in the original petition, although the parties do not dispute it was a claim presented for decision to the Arbitrator. The Court also noted that, while the Arbitrator was not required to state her reasons, she was required to explain her award "in a way sufficient to allow effective judicial review." McQueen, 2009 WL 755290, at *12 (internal quotation marks omitted). The Arbitrator on remand confirmed

that she decided this claim but gave no explanation at all how denying the claim was consistent with the law.

The standards for recovery under New York State's Human Rights Law ("NYSHRL") are "in accord with Federal standards under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.)." Ferrante v. Am. Lung Ass'n, 687 N.E.2d 1308, 1311 (N.Y. 1997). Title VII makes it unlawful for an employer to retaliate against an employee for, among other things, complaining of employment discrimination prohibited by Title VII:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To succeed in a sex discrimination retaliation claim, the petitioner must show that she was engaged in a protected activity, that she suffered an adverse employment action and that there was a causal connection between the protected activity and the adverse action, "i.e., that a retaliatory motive played a part in the adverse employment action." Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006). In Burlington Northern and Sante Fe Railway Co. v. White, 548 U.S. 53 (2006), the Supreme Court clarified that to prevail on a claim of retaliation under

12

Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 67-68 (internal quotation marks and citation omitted). This determination requires a careful case-by-case analysis of the context in which the alleged retaliation occurred. Id. at 69. Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to establish a "legitimate, non-discriminatory reason" for the action. See Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993). If the employer meets its burden, the burden shifts back to the plaintiff to show that "there is sufficient potential proof for a reasonable [factfinder] to find the proffered legitimate reason merely a pretext for impermissible retaliation." Gallagher v. Delaney, 139 F.3d 338, 349 (2d Cir. 1998).

Pursuant to the Local Civil Rights Restoration Act of 2005 ("Restoration Act"), N.Y.C. Local Law No. 85 (2005), the Court must evaluate claims brought under the New York City Human Rights Law ("NYCHRL") separately from counterpart claims brought under Title VII of the Civil Rights Act of 1964 and the NYSHRL. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (explaining that the Restoration Act "abolish[ed]

13

'parallelism' between the [NYCHRL] and federal and state anti-discrimination law"); Restoration Act § 7 ("The provisions of this [] title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed."); id. § 1 ("Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of [the NYCHRL], viewing similarly worded provisions of federal and state civil rights laws as a floor below which the [NYCHRL] cannot fall . . . ."). The "'uniquely broad and remedial purposes'" of the NYCHRL compel this independent liberal construction analysis. Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 31 (App. Div. 2009) (citing N.Y.C. Admin. Code § 8-130); see also Loeffler, 582 F.3d at 278. To constitute a violation of the NYCHRL, an act of retaliation must have been "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7). The retaliation "need not result in an ultimate action with respect to employment." Id.

McQueen appears to have presented evidence to the Arbitrator sufficient to satisfy the standard set out in the NYCHRL, forbidding retaliation to play any role in employment

14

decisions.  The Arbitrator provided no explanation why the seemingly uncontradicted evidence did not demonstrate retaliation as a matter of law under the NYCHRL.  Golden testified that he did not provide assistance to McQueen in finding a position, in part, because of what she said in her interview, which appeared to be her questioning whether she was terminated because she was black.  This testimony also appears to have satisfied the NYSHRL standard because the refusal to provide assistance might have dissuaded a reasonable employee from complaining about an employment decision allegedly based on race.  If there are defenses or explanations to this conduct, the respondents have not provided them and the Arbitrator did not refer to them.

The Court of Appeals, in Sobel, explained that "the extent of an arbitrator's obligation to explain his award is necessarily related to the scope of judicial review of it."  469 F.2d at 1214.  The Arbitrator did not provide any basis for the Court to exercise effective judicial review.  The Court of Appeals recognizes that the standard for manifest disregard of law "is difficult to apply . . . when arbitrators give no explanation for their decision." Willemijn Houdstermaatschappij, 103 F.3d at 12.  In such cases, "a reviewing court can only infer from the facts of the case whether the arbitrators appreciated the existence of a clearly

15

governing legal principle but decided to ignore or pay no attention to it." Id. at 12-13 (alterations and quotation marks omitted). A court may infer manifest disregard of law if the arbitrator's error "is so obvious that it would be instantly perceived by the average person qualified to serve as an arbitrator." Id. at 13; see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986). In this case, there is no discernible justification for the outcome reached by the Arbitrator and the Arbitrator, although specifically directed to the specific retaliation issue on remand, provided no explanation for rejecting it, and did not resolve the claim "in a way sufficient to allow effective judicial review," Rich v. Spartis, 516 F.3d 75, 83 (2d Cir. 2008).

The Court therefore remands this case for a second time to the Arbitrator. Consistent with the procedure followed by the Court of Appeals in Hardy, the Court requests the Arbitrator to (1) confirm "facts which have not been brought to [the Court's] attention which support" the Arbitrator's finding rejecting the petitioner's claim of retaliation based on her asking whether she was fired on the basis of her race; (2) "[i]n the alternative, assert some other [legal] ground" for rejecting the claim; or (3) "[f]ailing both of these, acknowledge that it erred" in its finding on the issue of retaliation, find

16

liability and proceed to damages.  See Hardy, 341 F.3d at 134. The Arbitrator's decision would then be subject to effective judicial review.  If the Arbitrator does not find the respondents liable after reviewing this case, the Court, pursuant to the FAA, has the power to vacate the arbitration award and allow the claim to proceed in court, if it finds that the decision as explained by the Arbitrator is in manifest disregard of the law.  9 U.S.C. § 10; see Halligan, 148 F.3d at 204.

## CONCLUSION

For the reasons explained above, this matter is remanded to the Arbitrator in accordance with this Opinion.  The Clerk is directed to close Docket No. 13.

**SO ORDERED.**

**Dated:    New York, New York**
**          March 2, 2010**

_____
**John G. Koeltl**
**United States District Judge**

liability and proceed to damages.  See Hardy, 341 F.3d at 134. The Arbitrator's decision would then be subject to effective judicial review.  If the Arbitrator does not find the respondents liable after reviewing this case, the Court, pursuant to the FAA, has the power to vacate the arbitration award and allow the claim to proceed in court, if it finds that the decision as explained by the Arbitrator is in manifest disregard of the law.  9 U.S.C. § 10; see Halligan, 148 F.3d at 204.

## CONCLUSION

For the reasons explained above, this matter is remanded to the Arbitrator in accordance with this Opinion.  The Clerk is directed to close Docket No. 13.

SO ORDERED.

Dated:   New York, New York
         March 2, 2010

                                    _____
                                         John G. Koeltl
                                    United States District Judge

17