**United States District Court**
**Southern District of New York**
‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗

**LISA MCQUEEN-STARLING,**

                       Claimant,         08 Civ. 4885 (JGK)

      - against -              MEMORANDUM OPINION AND
                                                             ORDER
**UNITED HEALTH GROUP, INC. AND OXFORD**
**HEALTH PLANS,**

                       Respondents.
‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗

**JOHN G. KOELTL, District Judge:**

     The petitioner, Lisa McQueen-Starling ("McQueen"), moves to reopen her petition to vacate an arbitration award entered in favor of the respondents, UnitedHealth Group, Inc. ("UHG") and Oxford Health Plans ("Oxford), on her employment discrimination claims.  This Court previously denied the petition "except to the extent that the arbitration award disposed of the petitioner's claim that she was the victim of retaliation for asking whether she was fired on the basis of race" as prohibited under New York State's Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL"), and New York City's Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").  McQueen-Starling v. UnitedHealth Grp., Inc. ("McQueen I"), 654 F. Supp. 2d 154, 168-69 (S.D.N.Y. 2009).  After remand, the Arbitrator stated that it had rejected the petitioner's claim of retaliation, but did not provide an explanation.  The petitioner then filed her first

1

motion to reopen her petition to vacate.  The Court again remanded the case to the Arbitrator, requesting that it

> (1) confirm 'facts which have not been brought to [the Court's] attention which support' the Arbitrator's finding rejecting the petitioner's claim of retaliation based on her asking whether she was fired on the basis of her race; (2) '[i]n the alternative, assert some other [legal] ground' for rejecting the claim; or (3) '[f]ailing both of these, acknowledge that it erred' in its finding on the issue of retaliation, find liability and proceed to damages.

McQueen-Starling v. UnitedHealth Grp., Inc. ("McQueen II"), No. 08 Civ. 4885, 2010 WL 768941, at *7 (S.D.N.Y. Mar. 8, 2010) (quoting Hardy v. Walsh Manning Sec., L.L.C., 341 F.3 126, 134 (2d Cir. 2003)).  The Arbitrator then issued an opinion explaining its reasons for rejecting the petitioner's claim of retaliation.  The petitioner now moves to reopen her petition to vacate the Arbitrator's award.

**I.**

**A.**

The following facts are undisputed and taken from the Opinions of the Arbitrator dated September 3, 2010 (Oct. 4, 2010 Affirmation of Debra L. Raskin Ex. 1 (the "2010 Opinion")), and January 28, 2008 (May 28, 2009 Affirmation of Debra L. Raskin Ex. 1 (the "2008 Opinion")), unless otherwise indicated.  They are set out only as necessary to understand the issues on this

motion to reopen.  A more complete description of the facts is set out in McQueen I and McQueen II.

The petitioner, who is an African-American female, worked for respondent Oxford from June 19, 2000 until Oxford's merger with respondent UHG in July 2004.  She continued working for UHG until late January, 2006.  Throughout this time, the petitioner's supervisor was William Golden.  Golden twice participated in hiring the petitioner at Oxford, and recommended her for a retention bonus occasioned by the merger.  (2008 Op. at 1-3.)

In late January, 2006, Golden was directed to eliminate duplicative positions.  He identified the petitioner's position as duplicative.  On March 29, 2006, together with a UHG Human Resources ("HR") representative, Golden informed the petitioner that her job was being eliminated and she was being laid off. Upon receiving the news, the petitioner asked whether she was being laid off because she was black.  Golden exited the room in response to this question.  The petitioner's termination was effective April 6, 2006.  (Id. at 3-4.)

In July 2006, the petitioner applied for another position with UHG.  Golden received a reference request about that application and referred the reference request to Human Resources.  Golden provided the following reasons for that action in testimony given during the arbitration proceedings:

3

"based on the circumstances under which she left I didn't feel appropriate that I would respond to the request . . . just how confrontational the meeting was.  I felt it was not appropriate for me to weigh in."  When asked whether it was because the petitioner asked "is this because I'm black?," Golden responded: "it was more the tone of her voice more than anything else . . . what she said, but more the tone of her voice."  (2010 Op. at 3.)  There is no evidence that Golden "ever took any action with regard to any other 'no-longer employed' employee other than referring a reference request to HR."  (Id. at 5.)

The petitioner did not receive the position for which she applied in July 2006.  During the arbitration proceedings, "[n]o direct evidence on the reasons why [the petitioner] did not receive the position was offered, and the indirect evidence on the record [did] not support an inference of any connection between the referral and [the petitioner's] non-selection."  (Id. at 5.)

**B.**

The procedural history of this case was laid out in McQueen I and McQueen II.  Briefly, the petitioner filed a Demand for Arbitration alleging race discrimination in violation of 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL, as well as sex discrimination in violation of the NYSHRL and the NYCHRL.  She

4

based these causes of action on alleged events and remarks that occurred during her employment with the respondents, up to and including her termination. The Arbitrator denied these claims in the 2008 Opinion, and the Court declined to vacate the award as to those claims. McQueen II, 2010 WL 768941, at *2-3.

The petitioner also alleged retaliation for her opposition to discriminatory employment practices as prohibited by the NYSHRL and NYCHRL, based on Golden's post-termination refusal to recommend her for another position with UHG. The Arbitrator did not specifically address this claim in the 2008 Opinion. Because the 2008 Opinion focused exclusively on pre-termination events, the Court remanded the case to the Arbitrator for clarification and decision with respect to the claim of post-termination retaliation. McQueen I, 654 F. Supp. 2d at 167-68.

The Arbitrator subsequently issued a Clarification on April 28, 2009 (the "2009 Clarification"), summarily stating that the 2008 Opinion disposed of the petitioner's claim that she was the victim of retaliation for asking whether she was fired on the basis of race. Because the Arbitrator "did not provide any basis for the Court to exercise effective judicial review," there was "no discernible justification for the outcome reached by the Arbitrator," and the petitioner appeared "to have presented evidence to the Arbitrator sufficient to satisfy the

5

standard set out in the NYCHRL," the Court again remanded the case to the Arbitrator.  McQueen II, 2010 WL 768941, at *6-7.[1]

On September 3, 2010, the Arbitrator reaffirmed the 2008 Opinion and the 2009 Clarification.  It assumed that the petitioner did in fact ask whether she was being fired on the basis of race, that that question was a "complaint" for the purposes of the NYCHRL, and that Golden's referral of the reference request to the HR Department constituted an "employment action" for the purposes of the NYCHRL.  (2010 Op. at 2.)

Nevertheless, the Arbitrator concluded, the referral "cannot be construed as an act of retaliation 'reasonably likely to deter a person from engaging in protected activity.'"  (Id. at 2-3 (quoting N.Y.C. Admin. Code § 8-107(7).)  The Arbitrator found that Golden "testified forthrightly" and that "viewed in the context of his prior actions on behalf of Claimant throughout her employment," his testimony "d[id] not support a finding of any discriminatory intent on the part of [Golden] or [UHG]." (Id.)  The Arbitrator also found that the record failed to "provide a basis from which one could reasonably infer" that Golden intended to harm the petitioner or that she was in fact

---

[1] The Court noted that the petitioner also appeared to have satisfied the NYSHRL standard, which is an arguably more demanding standard for a complainant to satisfy.  McQueen II, 2010 WL 768941, at *6.  In their briefs to the Court, the parties have focused on whether the Arbitrator erred in rejecting the petitioner's claim of retaliation under the NYCHRL because that is the most favorable standard for the plaintiff.

6

harmed by his referral to the HR Department, and that it therefore "did not support the position that a reasonable person would be deterred from engaging in protected activity in the future by this referral." (Id. at 4.)  The Arbitrator also noted the lack of evidence that Golden ever took any action for former employees other than referring reference requests to the HR Department.  (Id. at 5.)

## II.

### A.

As previously explained, the Arbitration Agreement in this case is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA").  The FAA permits a district court to vacate an arbitration award on four statutory grounds, or for "manifest disregard" of the law. McQueen II, 2010 WL 768941, at *4; see also 9 U.S.C. § 10(a); Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 407 (2d Cir. 2009).[2]

---

[2] The petitioner argues that the Arbitration Agreement provided for a more relaxed standard of review, and that this standard should govern this Court's review of the award.  The Court rejected this argument in McQueen II, 654 F. Supp. 2d at 160-64, based on controlling Supreme Court precedent.  See Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576 (2008); see also Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94 (2d Cir. 2008), rev'd on other grounds, 130 S. Ct. 1758 (2010) ("The [Hall Street] Court rejected the parties' attempt to contract around the FAA for expanded judicial review of arbitration awards, concluding that the grounds for vacatur of an arbitration award set forth in the FAA, 9 U.S.C. § 10, are 'exclusive.'").  Nothing in the Supreme Court's reversal of Stolt-Nielsen suggests any retreat from this aspect of Hall Street.  See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758 (2010).

Review pursuant to the manifest disregard standard is "severely limited," India v. Cargill Inc., 867 F.2d 130, 133 (2d Cir. 1989 (internal quotation marks omitted), and "allows a reviewing court to vacate an arbitral award only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 91-92 (2d Cir. 2008) (internal quotation marks omitted), rev'd on other grounds, 130 S. Ct. 1758 (2010). Manifest disregard requires "more than error or misunderstanding with respect to the law," id. at 92 (internal quotation marks omitted), and an arbitration award should be enforced "if there is a barely colorable justification for the outcome reached," Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004) (internal emphasis and quotation marks omitted). The Court of Appeals does not recognize "manifest disregard of the evidence as proper ground for vacating an arbitrator's award." Id. at 193 (internal quotation marks omitted).

**B.**

The standards for recovery under NYSHRL are "in accord with Federal standards under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.)." Ferrante v. Am. Lung Ass'n, 687 N.E.2d 1308, 1311 (N.Y. 1997). Title VII makes it unlawful for an employer to retaliate against an employee for, among

8

other things, complaining of employment discrimination prohibited by Title VII.  42 U.S.C. § 2000e-3(a).  To succeed in a sex discrimination retaliation claim, the petitioner must show that she was engaged in a protected activity, that she suffered an adverse employment action, that there was a causal connection between the protected activity and the adverse action, and that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Rwy. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); see also McQueen II, 2010 WL 768941 at *5.

To constitute a violation of the NYCHRL, an act of retaliation must have been "reasonably likely to deter a person from engaging in protected activity."  N.Y.C. Admin. Code § 8-107(7).  The retaliation "need not result in an ultimate action with respect to employment."  Id.

c.

In the 2010 Opinion, the Arbitrator first explained the standards applicable to retaliation claims under the NYSHRL and the NYCHRL.  (2010 Op. at 2 n.2.)  It then identified several facts that led it to conclude that the petitioner had not carried her burden under either standard: Golden's testimony

9

that he felt inappropriate weighing in on the petitioner's reference request because of the confrontational nature of the conversation that took place upon her termination; the lack of any evidence that Golden had ever provided a reference for a former employee or otherwise done more than refer the matter to the HR Department; and the lack of any evidence that Golden's actions affected the petitioner's chances of obtaining the position to which she applied.  (Id. at 3-5.)

The 2010 Opinion makes clear that the Arbitrator understood the applicable law and that the facts as found by the Arbitrator support the denial of the petitioner's retaliation claims.  As the Arbitrator found the facts, there was no evidence that Golden's decision to refer the request to the HR Department differed from his standard practice; to the extent that Golden was in part motivated by the specifics of his interactions with the petitioner, the Arbitrator found that the confrontational nature, rather than the substance, of the petitioner's comments were the cause.  Additionally, in the context of this case, the Arbitrator found that the reference to the HR Department had no impact on the petitioner's chances of obtaining the position to which she was applying, and that this action — even if it were taken because of the petitioner's complaint — was therefore not significant enough to be "reasonably likely to deter a person

10

from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7); see also Burlington, 548 U.S. at 68.

The factual findings that structure this analysis are consistent with the record and, in any event, cannot be independently reviewed by this Court to determine whether the weight of the evidence supports another conclusion. See Wallace, 378 F.3d at 193 ("A federal court may not conduct a reassessment of the evidentiary record . . . upon the principle that an arbitral award may be vacated when it runs contrary to strong evidence favoring the party bringing the motion to vacate the award." (internal quotation marks omitted)).

On these facts, the Arbitrator's denial of the petitioner's retaliation claims cannot be vacated. Both the NYSHRL and NYCHRL require (a) that an employee's complaint as to purportedly improper discrimination be a cause of the adverse employment action, and (b) that the adverse action have the potential to deter a reasonable person from complaining about the discrimination. While the Arbitrator's decision is not a model of clarity, the "manifest disregard of the law" standard does not require such scholarship. Reasonably read, the 2010 Opinion found that the reference to the HR Department was not caused by the petitioner's complaint, and that there was no evidence that it differed from Golden's normal practice. The Arbitrator credited Golden's testimony and found that there was

11

no intent to discriminate, which in this context indicated no intent to retaliate. The Arbitrator also found that that reference to the HR Department was not so significant as to dissuade a reasonable person from raising complaints of discrimination. Accordingly, the Arbitrator was well within its authority in concluding that neither the NYSHRL nor the NYCHRL was satisfied.

The petitioner argues that the Arbitrator "invented an incorrect legal standard" and therefore manifestly disregarded applicable law. (Mem. of Law in Supp. of 2d Mot. to Reopen Pet. to Vacate Arbitration Award 7.) Specifically, the petitioner points to the Arbitrator's discussion of (a) Golden's motive and (b) whether Golden's action actually harmed the petitioner by making it harder for her to obtain the position to which she was applying. The petitioner argues that these comments betray a mistaken belief that the law required invidious discriminatory motive or actual harm, neither of which is required under law.

Although some of the Arbitrator's discussion could be read to suggest an improper focus on invidious motive or harm-in-fact, the Arbitrator's analysis falls far short of manifest disregard of the law. Both of the factual discussions to which the petitioner points as evidence of manifest disregard of the law are relevant to a proper inquiry under the NYSHRL and NYCHRL. First, although there is no requirement under either

12

statute that an employer <u>intend</u> to harm an employee, it still must be determined whether the employer's conduct was caused in whole or in part by the protected activity.  The Arbitrator could properly consider whether there was any evidence that Golden had a retaliatory motive in choosing between the competing inferences allowed by the evidence: that Golden declined to provide a reference for the petitioner in retaliation, on the one hand, or that he declined to do so out of a general practice or because he believed that the confrontational nature of the termination conversation made it inappropriate.

Second, although there is no requirement that an employee be harmed to maintain a retaliation claim, the employee still must show that a reasonable person would likely be deterred from complaining by the adverse action.  This necessarily entails an assessment of the seriousness of the adverse action and its potential impact on an employee.  Therefore, the Arbitrator could properly consider the effect of a reference to the HR Department — that is, whether it could have an actual harmful impact — in determining whether a reasonable person in the petitioner's position would be deterred from complaining as a result of Golden's action.

**CONCLUSION**

For the reasons explained above, the petition to vacate the arbitration award is **denied**.  The Clerk is directed to close Docket No. 26 and to close this case.[3]

**SO ORDERED.**

**Dated:    New York, New York
           January    , 2011**              _____
                                                 **John G. Koeltl
                                            United States District Judge**

---

[3] In a footnote in their opposition brief, respondents request confirmation of the 2010 Opinion pursuant to 9 U.S.C. § 9.  Under 9 U.S.C. § 6, an application to confirm an award must be "made and heard in the manner provided by law for the making and hearing of motions, except as otherwise . . . expressly provided."  Respondents' footnote is insufficient to obtain certification, because "[a] footnote in an opposing brief is not the functional equivalent of a motion" for the purposes of Title 9."  Riddle v. Wachovia Sec., LLC, No. 8:05CV87, 2006 WL 83101, at *2 (D. Neb. Jan. 12, 2006); see also Fed. R. Civ. P. 7(b) (setting out requirements for a motion).

14

## CONCLUSION

For the reasons explained above, the petition to vacate the arbitration award is **denied**. The Clerk is directed to close Docket No. 26 and to close this case.[3]

**SO ORDERED.**

Dated: New York, New York
       January /0, 2011

John G. Koeltl
United States District Judge

---

[3] In a footnote in their opposition brief, respondents request confirmation of the 2010 Opinion pursuant to 9 U.S.C. § 9. Under 9 U.S.C. § 6, an application to confirm an award must be "made and heard in the manner provided by law for the making and hearing of motions, except as otherwise . . . expressly provided." Respondents' footnote is insufficient to obtain certification, because "[a] footnote in an opposing brief is not the functional equivalent of a motion" for the purposes of Title 9." Riddle v. Wachovia Sec., LLC, No. 8:05CV87, 2006 WL 83101, at *2 (D. Neb. Jan. 12, 2006); see also Fed. R. Civ. P. 7(b) (setting out requirements for a motion).

14